ST. LOUIS AND S. F. R. CO. vs SHARROCK ET AL.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 158).

1. *Carriers—Limitation of Liability.*

> The contract fixed the measure of the value of the horses, shipped by a carrier, in case of their loss or destruction through the fault of the appellant, at $60. *Held;* This amount is to be taken as the amount of recovery to be had by appellees in case of total loss under such circumstances, is fixed and liquidated by the contract of shipment, thereby estopping the appellee from demanding a greater price and the appellant from reducing the price.

2. *Trial—Evidence, Error in Ruling on—Effect.*

> An error in ruling on the admission or exclusion of evidence is cured by an authorized verdict.

Appeal from the United States Court for the Southern District of the Indian Territory; before Justice Hosea Townsend, November 11, 1904.

Action by A. N. Sharrock and another against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

*P. L. Soper,* for appellant.

*Cruce, Cruce & Bleakmore,* for appellees.

LAWRENCE, J. November 29, 1902, appellant, a common carrier, by written agreement with appellees undertook to ship in two cars 72 horses from Roff, I. T., to Kansas City, Mo. In consideration of a reduced rate of freight, the liability of the appellant was limited and that of appellees enlarged, in

that appellant should only be liable for damage resulting to said animals from its negligence in the handling of said cars after receipt thereof and for negligence in transportation. Appellees assumed the duty of selecting the cars upon which to load the horses, of seeing that all openings were closed and securely fastened and kept in that condition, and of notifying the carrier of any defect appearing in the cars, and of making demand in writing for other cars if necessary, of loading and unloading, and, when necessary, reloading the stock, feeding, watering, and attending to same at their risk and expense, and, as a condition precedent to recovery for damages for delay, loss, or injury to the horses, the giving appellant written notice of the claim therefor before the stock should be removed from point of shipment or point of destination, and before the same was mingled with other stock, and within one day after their delivery at destination; and further, that no action should be commenced after six months from the time the cause of action should accrue, and that in consideration of free transportation for two persons to go with said stock, as employes of shippers, appellees were to look after and care for same, and that the stock should be in the sole charge of such persons for the purposes of attention and care. It appears that the line of appellant's road is continuous from place of shipment to place of destination. It is alleged in the complaint that the horses were delivered to appellant at said place of shipment, properly loaded in the cars furnished by appellant, and that the animals were in sound health and excellent condition, and by proper handling of said cars would have reached the place of destination in like condition; that the cars were part of a long train, which was carelessly and negligently operated and run by appellant at a high rate of speed, and frequently stopped and started suddenly and violently, causing great and severe concussion of the cars containing the animals with other cars of the train, thereby throwing the animals with great

force and violence against the floor, sides, and ends of the cars in which they were so confined, whereby many of them were killed outright, and the remainder so badly injured as to render them utterly worthless; and, moreover, that these acts of appellant were done after continual protest of appellees, their importunities that the cars containing the horses be separated from said train, and appellees be allowed to unload and care for said horses, but appellant denied such request, and willfully, wrongfully, and negligently, and in disregard of the rights of the appellees, continued to so operate said train to the said place of destination, Kansas City, Mo.; that many of said horses were dead, and the remainder crippled, bruised, and maimed so badly as to render them without market value at said place of destination. It is further averred that appellees, immediately upon the arrival of said cars at place of destination, gave appellant notice in writing of the damaged and worthless condition of the horses, and their claim for damages therefor in the sum of $4,320.

The answer denies that the horses were in good condition when loaded upon the cars, but were gaunt and weak for want of food, and not in fit condition for shipment; denies its negligence in so operating the train as to cause the horses to be thrown with great force against the sides, ends, and floors of the cars, or that it otherwise carelessly operated the train, but states that the train was operated in a careful and proper manner, and if said animals were injured it was because or their gauntness and weakness and their physical condition at the time of shipment. It denies that the appellees during said transit protested against the manner in which the animals were being carried, and the injury to them thereby, and asked that the cars be set out of said train, that they might unload and care for them, and states that if any of them were killed, crippled, maimed, and bruised to any degree whatever the

same was caused by their wild, unruly, and weak condition, and the said maiming was caused by their viciousness to each other. It is further averred in the answer that when the train arrived at Cherokee, Kan., before reaching Kansas City, the appellees refused to have anything to do with the cars of horses, and appellant unloaded said horses, and sold and disposed of the same to the best advantage for $508.50, but that the expense of handling them was $288.35, leaving a balance of $220.15, which amount has been tendered appellees in open court.

There were two applications for shipment of the stock in question, of the same tenor for each car of stock, which constitute parts of the contracts of shipment, and were read in evidence as such, each as follows:

"To the St. Louis & San Francisco Railroad Company: The undersigned offers for shipment over your road 36 head of horses from Roff, I. T., to Kansas City, Mo., each head of the estimate weight of —— pounds, and valued at sixty dollars per head, and —— head of —— from —— to —— each head, of the estimated weight of —— pounds, and valued at —— dollars per ——, which valuation is named by me for the purpose of securing a reduced rate of freight on this shipment; and I agree that, in case of loss or damage to same, said valuation, so named, shall be conclusive should I make any claim for such loss or damage against any carrier over whose line they may pass. This application is an election on my part to avail myself of a reduced rate by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations. J. H. Sharrock, Owner or Shipper. Witness: W. M. C. Whirt."

"The St. Louis & San Francisco Railroad Company accepts this shipment and the above valuation as a basis for

fixing the rate of freight thereon. St. Louis & San Francisco Railroad Company, By J. C. Livingston, Agent."

The court charged the jury substantially that the only theory upon which the plaintiffs ask to recover is the negligence of the defendant, which it could not contract against, and the question to be determined was whether it had, under the proof, been negligent. If negligent, then plaintiffs would have a right of action to recover damages that they sustained by virtue of the negligence of the agents and employes of defendant. "The defendant denies that they were careless or negligent in any respect; that they conducted their trains in a reasonably orderly and proper manner. That proof is all before you, and you have to determine from the evidence whether there was any negligence or not. The burden is upon the plaintiffs to establish, by a fair preponderance of the evidence, the allegations and statements they make in their complaint. You are the sole judges of the weight of the testimony, and of the credibility of the witnesses who have testified. The question of fact is one exclusively for your consideration." Plaintiffs claim that by reason of negligence and carelessness of defendant the stock was so injured and damaged that they turned it over to the railroad company, and refused to do anything further with it; that defendant denies any such negligence, and says that, if the stock was damaged, that it is exempt from liability under the terms of the contract by reason of the stock being in a weak condition and not suitable for shipment; that "the stock, it appears, was taken to Kansas City, and the railroad company had charge of it, and it endeavored to sell it there, and did not succeed, and shipped it to some point in the state of Missouri, where the stock was sold by the railroad company, * * * and after deducting the expenses, freight charges, etc., there was a balance left of $222.15, which they bring into court and tender to plaintiffs;

that is, they admit their liability for $222.15, and say that they received that much out of the stock over and above the costs and expenses they were put to.   Now, if from the evidence you are satisfied that these plaintiffs should recover only that $222.15, by reason of the fact that amount had been tendered to them, which they have declined to accept   *    *' then the defendant would not be liable for the costs, because he has offered that amount and brought it into court, and the judgment would be against the defendant for $222.15 and against plaintiffs for costs.   But if you are satisfied that the plaintiffs should recover more for the loss of stock or for the damage by reason of the negligence of the defendant, and you are satisfied from the evidence, by a fair preponderance, that they have been negligent, then your verdict should be for the plaintiffs for whatever sum you in your judgment, according to the evidence, may determine that they would be entitled to recover by reason of that negligence; that is, negligence outside of the conditions of the contract.   The defendant claims a verdict, by the terms and conditions of the contract, from the negligence of the plaintiffs and the weakness of the horses; saying that they were not in a fit condition for shipment.   You have heard the whole case and heard the evidence, and with due regard to the fact that the preponderance is upon the plaintiffs to establish by a fair preponderance of the evidence, you can determine this case, now under the terms of the contract and the proof."

Attorney for appellant excepts to the statements as to measure of damages given by the court to the jury.

The attorney for appellees asked the charge that plaintiffs could not recover beyond $60 for any one horse, because that was named in the contract.   "By the Court.   It is true, but the contract controls that matter as far as the limitation is

concerned, and that is merely the maximum limitation. The terms of the contract fixes the relationship of the parties."

Attorney for appellees further requested the instruction to the jury as follows: "Paragraph 10 of this contract provides that in case of total loss of any stock, where the valuation becomes material, the value of $60 shall be conclusive upon both parties. We request the court now to charge the jury that if they find any stock was totally destroyed through the negligence of the defendant, without the contributory negligence of the plaintiffs, that as to the number destroyed they shall find the sum of $60. By Attorney for Appellant: The only question is, what constitutes total destruction? By the Court: I take it that this is pretty near total."

Defendant excepted to the last instruction. The case was tried by a jury, which found in favor of appellees, and assessed their damages at $3,000. Motion was made for new trial on the grounds that the verdict was against the law and the evidence; that the court erred in admitting testimony over the objection of the defendant, and refusing to exclude testimony from the jury asked by appellant, on account of irrelevancy and immateriality; and erred in its instruction to the jury as to the law of the case, and refused to charge as requested by appellant. The motion was overruled, and judgment was entered on the verdict.

The assignment of errors by appellant is a repetition of the grounds of the motion for new trial. It is only necessary to consider the action of the court in instructing the jury, and in admitting and excluding evidence over the objection and exception of appellant.

It is admitted by the appellees, as contended for by appellant, that the measure of damages, as a general rule,

would have been the difference between the market value of the horses in Kansas City in the condition in which they should have arrived and their market value in the condition in which they did arrive, and, ordinarily, the proof of the value of those horses would have been confined to their value in that market. It is contended, however, by appellees that the evidence in the case shows that there was no market value for such property in Kansas City at the time of its arrival there, and this clearly appears from the testimony of J. M. Grant, principal witness for the appellant, and the only witness who testified as to market value in Kansas City. He stated that he had been in the horse and mule business there for eight years; that he put the horses up for sale at that place for three or four days, and found it impossible to sell them on the market, and that there really was no market value for them. It was a question of fact for the jury to determine from all the evidence whether this want of market value was caused by the negligence of appellant in its shipment, or because of the condition of the animals when they were delivered for shipment, or because of their wild and vicious disposition toward each other, under proper instructions from the court. Whether or not the market value of the horses was destroyed or impaired because of the negligence of appellant is the pivotal point in the case and one of fact.

The question as to whether or not the court properly instructed the jury as to the elements of the measure of damages we think is not material to consider. The contract fixed the measure of the value of the horses in case of their loss or destruction through the fault of appellant at $60. This was made for the benefit of appellant, was a limitation in its favor, and is to be taken as the amount of recovery to be had by appellees in case of total loss under such circumstances, fixed

and liquidated by the contract of shipment, thereby estopping the shippers from demanding a greater price and the appellant from reducing the price. We think this is the construction to be given the contract; otherwise, the contract would lack the necessary element of mutuality. Hart vs Penn. R. R. Co., 112 U. S. 340, 5 Sup. Ct. 151, 28 L. Ed. 717.

It appears that the appellant, being unable to dispose of the horses in question in the market at Kansas City, shipped them to another place, where appellant, after considerable effort, realized for the entire lot of horses the net sum of $220.15. This is to be taken, from the terms of the contract and the facts found by the jury, as the value of the horses on arrival at their destination, and the difference between this amount and the value of the horses at time of shipment was found by the jury to be, in round numbers, $3,000. A careful reading of the evidence does not show that such verdict was thereby unauthorized, and if error was committed by the trial court in ruling upon the admission or exclusion of evidence, or of violating an abstract rule of law in instructing the jury, it was without prejudice to the appellants.

The judgment is therefore affirmed.

GILL, C. J., and CLAYTON, J., concur.